UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **WILLIE EARL SCOTT,** | } | |
| | } | |
| **Petitioner,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:18-cv-01787-RDP** |
| | } | |
| **TERRY  RAYBON, Waren of William C.** | } | |
| **Holman Correctional Facility,** | } | |
| | } | |
| **Respondent.** | } | |

### MEMORANDUM OPINION AND ORDER

In August 2002, Petitioner Willie Earl Scott ("Scott") was convicted of (1) two counts of capital murder for the killing and rape or attempted rape of 10-year-old Latonya Sager, and (2) three counts of burglary, attempted murder, and rape in the first degree of Landris Wright. (Doc. # 1 ¶¶ 15, 17). The penalty-phase of trial followed and following a 10-2 recommendation from the jury, Scott was sentenced to death. (*Id.* ¶ 18). Scott unsuccessfully appealed his sentence and conviction in the state courts on direct and postconviction appeal. (*Id.* ¶¶ 19-24). In this court, Scott, through counsel, sought a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. # 1). The court entered a memorandum opinion and accompanying order of dismissal, denying Scott's claims for habeas relief and further denying him a certificate of appealability ("COA") under 28 U.S.C. § 2253(c)(2). (Docs. # 42, 43).

This case is now before the court on Scott's Motion to Alter or Amend Judgment. (Doc. # 45). Scott asks the court to reconsider its denial of both substantive relief and a COA. The Motion has been fully briefed. (Docs. # 45, 55, 56). For the reasons discussed below, the Motion (Doc. # 45) is due to be denied.

## I.      Standard of Review

Federal Rule of Civil Procedure 59(e) authorizes a party to file a motion to alter or amend a judgment no later than twenty-eight days after the entry of the judgment. Such a motion may be filed in a federal habeas corpus proceeding and is not barred as a "second or successive habeas corpus application" under 28 U.S.C. § 2244(b). *Banister v. Davis*, 590 U.S. 504, 507 (2020). "Reconsidering the merits of a judgment, absent a manifest error of law or fact, is not the purpose of Rule 59." *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010). The moving party must do more than merely ask the court for a reevaluation of an unfavorable ruling. "A Rule 59(e) motion cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007), *cert. denied*, 552 U.S. 1040 (internal citations and quotations omitted). "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999). "[R]econsideration of an order is an extraordinary remedy and is employed sparingly" to foster "the interests of finality and conservation of scarce judicial resources." *Rueter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 440 F. Supp. 2d 1256, 1267 (N.D. Ala. 2006). Whether to grant relief is a decision committed to the sound discretion of the district court. *Am. Home Assur. Co. v. Glenn Estess & Assocs., Inc.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985).

Because Scott's Motion is not based on newly discovered evidence, he must show a manifest error of law or fact in this court's denial of habeas relief. A showing of "manifest error" requires more than a petitioner's disagreement with "the outcome of a case, or . . . [belief that] the court did not properly weigh the evidence." *Daughtry v. Army Fleet Support, LLC*, 2014 WL 466100, at *2 (M.D. Ala. Feb. 5, 2014); *see, e.g.*, *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th

Cir. 1993) (recognizing that "mere disagreement does not support a Rule 59(e) motion"). "A 'manifest error' is not just any error but one that 'is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" *Barber v. Dunn*, 2019 WL 1979433, at *1 (N.D. Ala. May 3, 2019) (quoting Error, *Black's Law Dictionary* (10th ed. 2014)).

Under § 2254(d), federal habeas relief is precluded if "fairminded jurists could disagree" about the correctness of the state court's merit-based decision to deny Scott relief. *See Harrington v. Richter*, 562 U.S. 86, 101-02 (2011). The Supreme Court has repeatedly explained that, to obtain federal habeas relief, a habeas petitioner must show that the state court's adjudication of his claims was not merely "incorrect or erroneous" but also "objectively unreasonable" – such that no fair minded jurist could agree with the state court's disposition of his claims under clearly established Supreme Court precedent or based on the facts presented. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003); *see also Harrington*, 562 U.S. 86 at 101-02.

Consequently, to succeed on his Rule 59(e) Motion, Scott must show that this court completely disregarded controlling law or credible record evidence in concluding that the state court's adjudication of his claims did not transgress AEDPA's highly deferential standard of review. That is a high burden, and one that Scott has not met.

## II.     Discussion

Scott asks the court to reconsider its conclusion that the ACCA did not unreasonably reject his claim that counsel was ineffective during the penalty phase. He raises two arguments in support. He contends that the court (1) used the incorrect § 2254(d)(1) framework in analyzing the cases brought by Scott in Claim A of his habeas petition; and (2) improperly characterized

the evidence not presented at the penalty phase as "cumulative." Scott also argues that the court

erred in declining to issue a COA.  The court addresses each of these arguments, in turn.

### A.    Scott has not identified manifest error in the court's application of the § 2254(d)(1) framework to Claim A

Citing Supreme Court case *Andrew v. White*, 604 U.S. 86 (2025), Scott argues that the

court misapplied the § 2254(d)(1) framework to Scott's claim of (ineffective assistance of

counsel at the penalty phase) by requiring a factual twin case before analyzing whether the state

court applied the governing rule reasonably. As a preliminary matter, the parties dispute whether

Scott should have raised *Andrew* pre-judgment. (Doc. 56 at 10). But even if Scott is right on that

procedural point, *Andrew* does not satisfy his manifest error or AEDPA burden. Scott reads

*Andrew* too broadly. The holding in *Andrew* is that "clearly established law" from *Payne v.*

*Tennessee*, 501 U.S. 808 (1991) "provided that the Due Process Clause forbids the introduction

of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair." *In re Killen*,

No. 25-13084, 2025 WL 4052407 at *2 (11th Cir. Oct. 3, 2025), *cert. denied sub nom. Killen v.*

*United States*, 224 L. Ed. 2d 40 (Feb. 23, 2026), *reh'g denied*, No. 25-6585, 2026 WL 1377057

(U.S. May 18, 2026) (quoting *Andrew*, 604 U.S. at 96). In reaching this conclusion, the Court

stated "[t]o the extent that the Court of Appeals thought itself constrained by AEDPA to limit

*Payne* to its facts, it was mistaken. General legal principles can constitute clearly established law

for purposes of AEDPA so long as they are holdings of this Court." *Andrew*, 604 U.S. at 94.

*Andrew* is not a *Strickland* mitigation decision and does not itself provide a holding Scott

can rely on as clearly established law. But, even if the court were to accept that *Andrew*'s

"clearly established law" framework applies in the mitigation context, Scott's argument still

fails. He has not identified "certain principles" in *Wiggins v. Smith*, 539 U.S. 510 (2007),

*Williams v. Taylor*, 529 U.S. 362, or *Rompilla v. Beard*, 545 U.S. 374, which "are fundamental

enough" that the ACCA unreasonably failed to apply them to "his new factual permeations" (much less that any purported unreasonable failure was "beyond doubt."). *Andrew*, 604 U.S. at 94 (internal quotations omitted).

First, the court expressly set forth the holdings in *Rompilla*, *Wiggins*, and *Williams*, and found that none of these cases afforded Scott relief. (Doc. # 42 at 54-60). Similarly, the court expressly held that *Wiggins* and *Williams* did not aid Scott in satisfying his burden under the contrary to or unreasonable application clauses. (*Id.*). In doing so, it did not collapse the two analyses, as Scott suggests. (Doc. 45 at 9). And to be clear, to the extent that the court did not use the "unreasonable application" language in its analysis of *Rompilla*, it now clarifies that *Rompilla* suffers the same fate. As noted in the court's memorandum opinion, the clearly established holding of *Rompilla* is "defense counsel were ineffective under *Strickland* for failing to make reasonable efforts to review a prior conviction file, even though they knew that the prosecution would seek the death penalty by proving the defendant had a significant history of felony convictions indicating the use of threat or violence, an aggravator under state law." (Doc. # 42 at 54) (internal citations omitted).[1]

> The ACCA adopted the reasoning of the trial court and held that:
>
> Trial counsel's strategy relied on presenting sympathetic witnesses who could testify that Scott was capable of loving others and that his family loved and cared for him...Nevertheless, as noted, they also presented considerable evidence of Scott's tortured background as evidenced by the substance abuse of his mother and her unavailability at trial due to her incarceration…The DHR records, medical records, and certain witnesses would have been largely cumulative of the matters presented at the penalty phase. Therefore this Court concludes that trial

---

[1] Scott disagrees with this description of the holding and would prefer a much broader reading of *Rompilla*. However, the Eleventh Circuit has articulated the holding in *Rompilla* in the same manner as this court. *Hannon v. Sec'y, Dep't of Corr.*, 562 F.3d 1146 (11th Cir. 2009) ("*Rompilla* requires "reasonable efforts to obtain and review material counsel knows the prosecution will probably rely on as evidence of aggravation at the sentencing phase of trial"). As has this court. *See Reynolds v. Dunn, No.* 4:18-CV-00236-RDP, 2022 WL 895947 at *118 (N.D. Ala. Mar. 25, 2022), *aff'd sub nom. Reynolds v. Comm'r, Ala. Dep't of Corr.*, No. 22-14015, 2024 WL 4431791 (11th Cir. Oct. 7, 2024) ("*Rompilla* held that trial counsel was ineffective for failing to obtain materials that counsel had known the prosecution would probably use at the trial's sentencing phase.")

counsels' investigation and presentation at the penalty phase was not objectively unreasonable.

(Doc. 14-59 at 186-87).[2] The circuit court conducted, and the ACCA adopted, a reasonableness assessment of Scott's counsel's penalty phase investigation. That state court decision was not objectively unreasonable. Scott has not proven that his counsel knew the prosecution would rely on the DHR records, and similarly, he has not proven that further investigation would produce a "treasure trove of unrealized mitigation." *See Davis v. Comm'r, Alabama Dep't of Corr.*, 120 F.4th 768 (11th Cir. 2024) (applying *Rompilla*). As this court repeatedly emphasized in its memorandum opinion, AEDPA's unreasonable application clause is unavailable if "fairminded jurists could disagree as to the correctness" of a particular decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011). Scott failed to show that the ACCA unreasonably applied the Supreme Court's holding in *Rompilla*.

Second, though Scott contends that this court applied the incorrect standard, he failed to address his own AEDPA burden. At no point in his Rule 59(e) motion does he explain why these three cases establish that the ACCA unreasonably denied him penalty-phase *Strickland* relief. Citing *Wiggins*, Scott points to the failure to address the deficient mitigation investigation of the DHR records. He never substantiates why the ACCA's rejection of this claim on prejudice grounds was objectively unreasonable given his failure identify available witnesses to testify about the DHR records.

Third, invoking *Williams*, Scott argues that the court did not address "the totality reweighing" rule. Yet, he never identifies what concrete mitigation the ACCA unreasonably failed to reweigh in his case. (Doc. # 45 at 11). The uninvestigated evidence Scott references elsewhere in the petition is his grandmother's mistreatment and the mitigation expert's testimony

---

[2] This is the ACCA's quote of the circuit court decision. The ACCA later states: "We agree with the circuit court's findings here." (Doc. 14-59 at 187).

"link[ing]" his childhood trauma to a reduced moral culpability. (Doc. # 45 at 17-18). In contrast, in *Williams*, the state court failed to address a larger collection of new mitigating evidence, including that the defendant turned himself in for a crime that the police would never have discovered. 529 U.S. at 397. Scott's Rule 59(e) motion fails to address these material differences.

Fourth, citing *Rompilla*, Scott argues that counsel may perform deficiently when they fail to investigate readily available records that would expose material facts. (Doc. # 45 at 7-8). But, as already noted, Scott does not explain how the ACCA's decision runs afoul of *Rompilla*. Further, to the extent Scott relies on the DHR records, he has not addressed his failure to identify witnesses at the Rule 32 stage who would have testified about the contents of those records.[3]

Finally, Scott maintains that the court committed manifest error because it did not consider the mitigation reweighing principles properly in analyzing *Strickland* prejudice. For Scott to show that he was prejudiced by counsel's deficient mitigation performance, he must show a "reasonable probability that, but for counsel's deficient unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "When evaluating the reasonable probability of a different result in a capital sentencing proceeding, 'we consider the totality of the available mitigation evidence – both that adduced at trial, and the evidence adduced in a habeas proceeding – and reweigh it against the evidence in aggravation." *Daniel v. Comm'r, Alabama Dep't of Corr.*, 822 F.3d 1248, 1274 (11th Cir. 2016) (cleaned up) (quoting *Porter v. McCollum*, 558 U.S. 30, 41 (2009)). This argument fails for the reasons stated below.

---

[3] Scott points to non-AEDPA holdings that he claims are favorable to him on the *Strickland* prejudice issue. But those decisions are inadequate to show that the ACCA unreasonably rejected that prong of his penalty-phase ineffective assistance claim as they "offer no guidance with respect to whether a state court has unreasonably determined that prejudice is lacking." *Cullen v. Pinholster*, 563 U. S. 170, 202 (2011).

As an initial matter, the court only credits the Vinnie Scott evidence and the expert testimony as new evidence for the purposes of reweighing mitigation. Again, Scott has not pointed to anyone willing to testify as to the contents of the DHR records during the penalty phase; therefore, the court cannot, for reweighing purposes, consider the DHR records as new mitigation evidence. Scott does not argue that the aggravating factors should be adjusted during reweighing. As such, Scott's combined mitigating information – upon rebalancing with the unadjusted aggravating evidence – would need to create a reasonable probability of a different sentencing outcome that is beyond reasonable debate. *See George v. Raybon,* No. 1:21-CV-0325-LCB, 2025 WL 1195569 at *48 (N.D. Ala. Apr. 24, 2025). It does not. As a reminder, the aggravating factors include Scott's previous conviction for a violent felony, the fact that the murder was committed while Scott was engaged in or attempting to engage in rape in the first degree, and the particularly heinous, atrocious, and cruel nature of his capital offense. The combined mitigation evidence is not objectively sufficient to overcome the strength of these aggravating factors and create a reasonable probability of a different sentencing outcome. To the contrary, fair-minded jurists could differ on the correctness of the ACCA's prejudice decision. Thus, this court cannot provide habeas relief to Scott on the *Strickland* mitigation claim, and Scott has not shown manifest error as required to prevail under Rule 59(e).

Scott also challenges the court's de novo analysis, but he limits his criticism to deficient performance. Because the court also found that Scott could not prove *Strickland* prejudice de novo on this claim, Scott's challenge of the first prong falls short of establishing manifest error as required by Rule 59(e).

**B.    The court's assessment of the ACCA's treatment of omitted evidence as cumulative was not manifest error**

Scott argues that the court committed manifest error in accepting the ACCA's treatment of his additional mitigation evidence as cumulative. Specifically, he argues that the manifest error occurred with the cumulative assessment of the new information about his grandmother and Dr. Salekin's testimony. Beginning with the abuse he endured from his grandmother, Scott fails to show that the ACCA unreasonably decided that this evidence was insufficient to show a vastly different picture of his childhood and did not create a reasonable probability of a different sentencing outcome. Again, as this court and the ACCA observed, the jury heard evidence of abuse and neglect in Scott's childhood, particularly by his mother. (Doc. # 42 at  96; Doc. # 14-59 at 186). Because of that overlap, the ACCA did not unreasonably discount the new evidence as cumulative and this court did not commit manifest error.

As to Dr. Salekin's testimony, Scott has not shown manifest error in this court's AEDPA analysis of the prejudice prong. That is, he has not shown that the ACCA unreasonably addressed this part of his *Strickland* mitigation claim in reweighing the favorable evidence against the aggravating factors. Scott argues that Dr. Salekin's testimony was not cumulative because it is a separate category of evidence – that is, expert testimony – that the jury did not hear. But Scott provides no legal authority for this distinction and as the court noted in its earlier opinion, *Morton v. Secretary, Florida Department of Corrections*, 684 F.3d 1157, 1169 (11th Cir. 2012), does not require penalty phase counsel to hire a mitigation expert. (Doc. # 42 at 86). Furthermore, Scott represents that Dr. Salekin's testimony should have been offered to provide a causal link between his tortured childhood and his criminal behavior. Yet, this is precisely what the evidence of his mother's abuse was offered by penalty phase counsel to show. Also, the trial court credited his mother's alcoholism and his joining a gang as mitigators in accepting the

9

jury's recommended sentence. (Doc. # 14-24 at 41) (stating that Scott "joined a gang in search of love"). Scott has not shown that the ACCA's treatment of Dr. Salekin's testimony as cumulative was objectively wrong, and therefore, has not established manifest error in the court's decision.

Scott again argues that the court should reweigh the totality of the mitigation evidence. But, as set forth in section A, reweighing the evidence does not entitle him habeas or Rule 59(e) relief. The evidence simply does not undermine the ACCA's decision that no reasonable probability of a different sentencing outcome existed given the strength of the aggravating factors.

Additionally, Scott argues that the court's cumulative assessment warrants revisiting the deficient performance analysis. Again, Scott's AEDPA burden is high, as is his burden to prove manifest error. Thus, the deficient performance analysis is doubly deferential here, and Scott's arguments falter at both hurdles. As set forth above, Scott has not shown that the ACCA rejected the deferential deficient performance prong in a manner "contrary to, or inolv[ing] an unreasonable application of...clearly established law." 28 U.S.C. § 2254(d)(1). At the very least, reasonable jurists could disagree as to the reasonableness of the mitigation investigation, which forecloses habeas relief. Therefore, the court did not commit manifest error in denying this claim.

### C.    Scott has not shown he is entitled to a COA

Scott argues that the court should amend the judgment and issue a COA. He contends that because the court found that certain portions of his claims were debatable or close calls, he is entitled to a COA. AEDPA requires a petitioner to obtain a certificate of appealability before challenging the denial of a habeas corpus petition filed under Section 2254. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); 28 U.S.C. § 2253(c)(2). Certificates of appealability are

granted or denied on an issue-by-issue basis. *Jones v. Sec'y, Fla. Dep't of Corr.*, 607 F.3d 1346, 1354 (11th Cir. 2010). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Slack v. McDaniel*, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El*, 537 U.S. at 336.

Scott confuses the AEDPA standard and the COA standard. The AEDPA standard asks a reviewing district court whether fair-minded jurists could disagree as to the ACCA's treatment of constitutional claims. The COA standard applies another level of review, and asks the district court to analyze whether reasonable jurists could disagree as to its own AEDPA deference analysis. While Scott is correct to observe that failing to obtain habeas relief when AEDPA deference applies does not automatically render a COA inappropriate, it is also true that applying the AEDPA deferential framework does not automatically trigger the issuance of a COA.[4]

The same holds true for Scott's brief quote from the court's prejudice holding regarding the mitigation investigation. (Doc. # 45 at 20). Scott did not include the full sentence in claiming that this court had determined the *Strickland* prejudice analysis under AEDPA did not point to a clear result. The full sentence reads as follows:

> But given the strength of the three aggravating factors that the trial judge found, as well as the numerous mitigating factors that already highlighted the difficulties of Scott's childhood, it is not clear that there is a reasonable probability – that is, a probability sufficient to undermine confidence in the outcome – that but for counsel's alleged unprofessional errors, the result of Scott's sentencing phase would have been different.

---

[4] To be clear, Scott offers no controlling authority in support of his proposition that applying the "fairminded jurists" standard in AEDPA analysis requires the issuance of a COA.

(Doc. # 42 at 103). In context, the court's reference to clarity was related to Scott's burden to show prejudice, which he did not meet.

Scott also points to the court's finding that procedural default on Claim A was a "close call" in support of his proposition that a COA is appropriate. (Docs. # 42 at 80; 45 at 24). To be clear, Scott is referring to the court's finding that his mitigation expert subclaim was *not* procedurally barred – a finding this court made in his favor. He also fails to account for the fact that the court denied this subclaim because it found that Scott did not meet his AEDPA burden under *Daniel* – a decision the court did not label a "close call." (Doc. # 45 at 80-87). While one component of the court's analysis on a subclaim (again, in this case, one that went in Scott's favor) may be subject to reasonable debate, other dispositive holdings on the subclaim may not be, as is the case here. This type of combination supports declining to issue a COA. Scott has thus failed to meet his burden to show that the court should amend the judgment and issue a COA on Claim A.

Scott has also failed to meet his COA burden with regard to Claims B-J. (Doc. # 45 at 25-28). Therefore, the court will not issue a COA on any claim.[5]

### III.  Conclusion

After careful review of Scott's Rule 59(e) Motion (Doc. # 45), the Government's response (Doc. # 55), Scott's reply (Doc. # 56), the state court record, and this court's Memorandum Opinion and Order (Docs. # 42, 43), the court concludes that Scott's Rule 59(e)

---

[5] The Eleventh Circuit and district courts within this circuit routinely address whether a habeas petitioner is entitled to a certificate of appealability in a summary manner. *See, e.g.*, *Bryant v. Sec'y, Fla. Dept. of Corr.*, 2017 WL 3446623, at *2 (11th Cir. July 21, 2017); *Jenkins v. Dunn*, No. 4:18-cv-869-VEH, 2017 WL 1927861, at *10 (N.D. Ala. May 10, 2017).

Motion to Alter or Amend Judgment (Doc. # 45) is due to be and is hereby **DENIED**.

    **DONE** and **ORDERED** this June 29, 2026.

_____
**R. DAVID PROCTOR**
SENIOR U.S. DISTRICT JUDGE